DECISION
{¶ 1} On June 12, 2002, defendant-appellant, Robert J. Caulley, filed an application to reopen his appeal and the judgment of this court rendered in State v. Caulley (Mar. 14, 2002), Franklin App. No. 97AP-1590. On appeal, this court affirmed the judgment of conviction and sentence of the Franklin County Court of Common Pleas on one count of murder and one count of manslaughter arising out of the deaths of Charles and Lois Caulley, appellant's parents.
 {¶ 2} Under App.R. 26(B), a defendant in a criminal case may apply for reopening of the appeal based upon a claim of ineffective assistance of appellate counsel. The application for reopening shall be granted if there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal. App.R. 26(B)(5).
 {¶ 3} The two-pronged analysis found in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, is the appropriate standard to assess whether defendant here has raised a "genuine issue" as to the ineffectiveness of his appellate counsel. State v. Hooks (2001),92 Ohio St.3d 83, 84. Under Strickland, a defendant must prove that his appellate counsel was deficient for failing to raise the issues he now presents and that there was a reasonable probability of success had those claims been presented on appeal. Hooks; State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 4} Appellate counsel's performance was deficient if it was unreasonable under prevailing professional norms. Strickland. Appellate counsel need not raise every non-frivolous issue. Jones v. Barnes (1983), 463 U.S. 745, 752, 103 S.Ct. 3308. Counsel may limit the number of arguments raised in order to focus on those issues most likely to bear fruit. State v. Allen (1996), 77 Ohio St.3d 172, 173.
 {¶ 5} Appellant proposes four assignments of error in support of his application to reopen his appeal:
 {¶ 6} "I. The trial court erroneously prohibited Mr. Caulley from introducing exculpatory evidence in violation of his Due Process Rights under the Fourteenth Amendment to the United States Constitution.
 {¶ 7} "II. Mr. Caulley's trial counsel was ineffective for failing to ask the trial court to call Ricky Nelson as its witness in violation of the Sixth Amendment to the United States Constitution.
 {¶ 8} "III. Trial counsel was ineffective for failing to object to Judge Hogan's testimony in violation of the Sixth Amendment to the United States Constitution.
 {¶ 9} "IV. Trial counsel's failure to object to the trial court allowing alternate jurors in the jury room during deliberations constitutes ineffective assistance of counsel under the Sixth Amendment to the United States Constitution."
 {¶ 10} The trial court record supporting defendant's conviction is succinctly summarized in this court's opinion in Caulley:
 {¶ 11} "Charles and Lois Caulley were found bludgeoned and stabbed to death in their home on Stringtown Road in Grove City, Ohio, on Sunday, January 16, 1994. The deaths were reported in a 9-1-1 telephone call made by appellant, who explained that he had gone to his parents house and found them dead. At the time of the elder Caulleys' death, appellant was employed by his father in the family plumbing business, C.J. Caulley Plumbing. A lengthy and extensive investigation by the Franklin County Sheriff's office was unable to develop any physical evidence from which to conclusively link anyone to the murder. No fingerprints were found on the knives used in the slayings, no footprints detected other than those of the EMT personnel, and no witnesses were found. Investigating officers pursued several leads provided by tipsters, without success.
 {¶ 12} "The investigating officers, however, remained suspicious of appellant even while the investigation otherwise stalled for nearly three years. The suspicions developed because of several perceived inconsistencies between statements given by appellant after the murders. In addition, several persons had noted that after the murders, appellant had a scratch on his face and a bruise on his neck which looked like a thumb print. Appellant explained the scratch by stating that his young son had caused it. Authorities further concluded that appellant had both the opportunity and motive to commit the crime, based upon disagreements with his father over the future of the plumbing business, the fact that appellant had, along with his two sisters, inherited substantial amounts of money upon his parents' death, and that appellant's sole alibi on the presumed night of the murder was provided by his wife.
 {¶ 13} "Almost three years after the murders, in December 1996, Franklin County Sheriff's Detective Zachary Scott and Sergeant Tony Rich flew to Houston, Texas, where appellant was employed as an aeronautical engineer with Continental Airlines. They went to appellant's workplace and requested that he voluntarily come to the Harris County (Houston) Sheriff's office for an interview. Appellant was transported in the officers' car and the interview began at approximately 3:20 p.m. on the afternoon of December 3, 1996. After a lengthy interview, which was punctuated by the arrival of appellant's wife, appellant, over the vigorous protestations of his wife, produced an incriminating statement which was tape-recorded by the officers. Appellant stated that he had gone to his parent's home after attending a hockey game on the night of Friday, January 14, 1994, where a discussion with his father deteriorated into a confrontation, during which his father pushed appellant causing him to fall onto and break a table. According to appellant's statement, the argument thereafter escalated until appellant hit his father with a baseball bat and then stabbed him. When appellant's mother intervened, he struck and stabbed her as well.
 {¶ 14} "After appellant made his statement in Houston, the interviewing officers telephoned Franklin County Assistant Prosecutor Dan Hogan, who advised them that appellant could be arrested based upon his statement. Appellant waived extradition and was returned to Columbus the following day.
 {¶ 15} "Appellant's wife also flew to Columbus shortly thereafter. Again on the advice of Assistant Prosecutor Hogan, she was subsequently arrested by the investigating officers for obstruction of justice, based upon her prior statements providing an alibi for appellant on the night of the murders. The investigating officers attempted to use Celeste Caulley's arrest as leverage to encourage appellant, who in the interim had refused to give a more detailed statement, to resume his dialogue with the investigating officers. Celeste Caulley was soon thereafter released and the charges against her dropped upon the personal intervention of Assistant Prosecutor Hogan. No further incriminating statements by appellant appear to have emerged from this particular phase of the investigation.
 {¶ 16} "Appellant was initially charged with two counts of aggravated murder with death penalty specifications and one count of aggravated robbery. * * *
 {¶ 17} "The matter thereafter proceeded to trial before a jury. The evidence introduced by the prosecution consisted first and foremost of appellant's confession given to the investigating detectives in Houston, in the form of an audiotape and a transcript. In addition, the prosecution presented testimony and other evidence intended to buttress the confession by demonstrating that the physical characteristics of the crime scene conformed to appellant's description in his confession as to how he committed the killings, and to demonstrate that appellant's personal, financial and career circumstances, as well as his strained relationship with his father and mother, gave him a motive to commit the murders.
 {¶ 18} "* * *
 {¶ 19} "The state also presented the testimony of former Assistant Prosecutor Dan Hogan, who, in the interim, had taken a seat on the bench of the Franklin County Common Pleas Court. Judge Hogan testified extensively in order to explain his interaction with the investigating detectives during appellant's interview, arrest, and subsequent detention upon being transported to Columbus.
 {¶ 20} "* * *
 {¶ 21} "The jury ultimately rejected the aggravated murder charges, but returned verdicts finding appellant guilty of murder in the death of his mother and voluntary manslaughter in the death of his father. The jury found appellant not guilty of aggravated robbery. Appellant was sentenced to fifteen years to life on the murder conviction and ten to twenty-five years imprisonment on the manslaughter conviction, to be served consecutively."
 {¶ 22} With respect to appellant's first proposed assignment of error, during trial, defense counsel sought to introduce the testimony of three witnesses claiming that a Ricky Nelson had confessed to them that he had killed Charles and Lois Caulley. Out of the presence of the jury, the trial court heard extensive arguments from counsel on the state's "objection" that defense counsel not be allowed to call the three witnesses in order to prove that Ricky Nelson had confessed to the homicides and, by inference, that appellant was innocent of the charges.
 {¶ 23} Defense counsel proffered that a Christie Tackett, who lived near Ricky Nelson, would testify that, within three weeks of the Caulley homicides, or in April 1994, Ricky Nelson "was bragging about committing" the homicides. (Tr. 3425.) It was also proffered that Jason Friend, who lived with Ricky Nelson, would testify that Ricky Nelson confessed to the homicides at about the same time. Jason Friend would have testified that, in August 1994, he and another person were riding with Ricky Nelson in Nelson's car. Ricky Nelson stopped his car about a block from the house of Kim Kelson, who is Jason Friend's mother. Ricky Nelson and the other individual then got out of the car and burglarized Kim Kelson's house.
 {¶ 24} The burglars stacked up the electronic equipment they were stealing. Jason Friend told his mother what happened and Kim Kelson filed criminal charges against Ricky Nelson and her son.
 {¶ 25} Defense counsel proffered that Kim Kelson would testify that she dropped the criminal charges for the burglary in part because she became afraid of Ricky Nelson after he told her that he had killed the Caulleys.
 {¶ 26} Defense counsel disclosed to the trial court that the defense had subpoenaed Ricky Nelson and that he was available to be called as a witness.
 {¶ 27} During the trial proceedings, the state argued that the testimony of the three proposed witnesses would be hearsay, and that their hearsay testimony is not admissible under Evid.R. 804(B)(3) unless the declarant, Ricky Nelson, was shown to be unavailable. Because Ricky Nelson was admittedly present under subpoena, the state argued that the three witnesses could not be called to testify.
 {¶ 28} After hearing legal arguments of counsel, the trial court ruled that the three defense witnesses could not be called to testify unless Ricky Nelson was called first.
 {¶ 29} The trial court informed defense counsel, "[i]f you think that Ricky Nelson did it, put him on the stand and ask him. Then from that point you might be able to introduce something by way of people." (Tr. 3430.)
 {¶ 30} Here, appellant contends that his appellate counsel was ineffective because he failed to raise as an assignment of error on appeal that it was error for the trial court to prohibit appellant from calling the three witnesses. Citing Chambers v. Mississippi (1973),410 U.S. 284, 93 S.Ct. 1038, appellant contends that the trial court's exclusion of the three witnesses' testimony on hearsay grounds violated his right to due process of law under the Fourteenth Amendment to the United States Constitution. We find, however, that appellant's first proposed assignment of error fails to set forth a basis for reopening his appeal.
 {¶ 31} Evid.R. 801(C) defines hearsay:
 {¶ 32} " `Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."
 {¶ 33} Evid.R. 802 is captioned "Hearsay Rule," and states:
 {¶ 34} "Hearsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio."
 {¶ 35} Evid.R. 804(B) is captioned "Hearsay exceptions":
 {¶ 36} "The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
 {¶ 37} "* * *
 {¶ 38} "(3) Statement against interest. A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."
 {¶ 39} As previously noted, appellant relies upon Chambers, supra, to support his contention that the trial court erred in prohibiting the testimony of Christie Tackett, Jason Friend, and Kim Kelson.
 {¶ 40} In State v. Patterson (1996), 110 Ohio App.3d 264, this court succinctly summarizes:
 {¶ 41} "In Chambers, the United States Supreme Court held that the defendant's due process rights were violated when the trial court excluded the out-of-court statements of a declarant to three separate witnesses that he had actually committed the crime with which the defendant was charged. At the time of trial, Mississippi did not recognize an exception to the hearsay rule for declarations that are against the penal interest of the declarant. In reversing the conviction, the Supreme Court held that the excluded testimony should have been admitted because the testimony `bore persuasive assurances of trustworthiness and thus was well within the basic rationale of the exception for declarations against interest.' * * * In so holding, the Supreme Court relied on its determination that `each confession here was in a very real sense self-incriminatory and unquestionably against interest.' * * *" Id. at 273.
 {¶ 42} In Patterson, this court, quoting State v. Sumlin (1994),69 Ohio St.3d 105, 111, recognized that Evid.R. 804(B)(3) itself protects an accused's constitutional rights. The Sumlin court stated:
 {¶ 43} " `Through Evid.R. 804(B)(3), Ohio has addressed one of the principal concerns of cases such as Chambers, which is that a criminal defendant's reliable evidence should not be excluded through application of hearsay rules that do not adequately protect due process rights. Evid.R. 804(B)(3) strikes a balance between hearsay statements against penal interest which are sufficiently trustworthy to be admissible and those which are not. * * *' "
 {¶ 44} Thus, while appellant here contends that the trial court's ruling violates the constitutional principles set forth in Chambers, supra, in actuality, if the trial court's ruling complies with Evid.R. 804(B)(3), it presumably complies with Chambers. Appellant does not contend that Evid.R. 804(B)(3) itself is constitutionally defective.
 {¶ 45} Clearly, the trial court's ruling excluding the testimony of the three witnesses complies with Evid.R. 804(B)(3). It is undisputed that Ricky Nelson was under subpoena for the trial and was available to be called as a witness. Ricky Nelson was not called to the stand to testify. Evid.R. 804(B)(3) provides that statements against interest can be admissible hearsay if the declarant is unavailable as a witness. Because Ricky Nelson was not shown to be unavailable, the trial court correctly ruled on the state's objection to the evidence. Accordingly, appellant's first proposed assignment of error does not set forth a basis for reopening his appeal.
 {¶ 46} Under his second proposed assignment of error, appellant contends that his trial counsel was ineffective for failing to ask the trial court to call Ricky Nelson as a witness. According to appellant, if the trial court had called Ricky Nelson as a witness under Evid.R. 614(A), Ricky Nelson's credibility could be impeached and defense counsel could have called Christie Tackett, Jason Friend and Kim Kelson to prove that Ricky Nelson had confessed to the homicides. We find, however, that appellant's second proposed assignment of error fails to set forth a basis for reopening his appeal.
 {¶ 47} Evid.R. 614(A) states:
 {¶ 48} "(A) Calling by court. The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called."
 {¶ 49} Evid.R. 607(A) provides:
 {¶ 50} "(A) Who May Impeach. The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage. * * *"
 {¶ 51} Evid.R. 614 codifies the common-law rule and permits a party to impeach a court-called witness with a prior inconsistent statement without a showing of surprise and affirmative damage. State v. Dacons (1982), 5 Ohio App.3d 112. The decision of a trial court to call a witness lies within its sound discretion. Id.; State v. Forehope (1991),71 Ohio App.3d 435, 441.
 {¶ 52} It is important here to note that it is conceivable that Ricky Nelson's unavailability could have been established by defense counsel's calling of Ricky Nelson to the witness stand. Evid.R. 804(A) states in part:
 {¶ 53} "(A) Definition of unavailability
 {¶ 54} " `Unavailability as a witness' includes any of the following situations in which the declarant:
 {¶ 55} "(1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement;
 {¶ 56} "(2) persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so;
 {¶ 57} "(3) testifies to a lack of memory of the subject matter of the declarant's statement."
 {¶ 58} We do not know what Ricky Nelson's testimony would have been had he been called as a witness by defense counsel. All we know is that defense counsel subpoenaed Ricky Nelson and that he was available to be called as a witness.
 {¶ 59} While it is certainly conceivable that Ricky Nelson's unavailability might have been established by calling him to the stand, it is equally conceivable that Ricky Nelson might have testified that he did make the statements that Christie Tackett, Jason Friend and Kim Kelson say he made, but that those statements were false and were designed to somehow impress his friends or to intimidate Kim Kelson. Had Ricky Nelson so testified, admitting on the stand that the statements were made, the extrinsic evidence from the three witnesses regarding his statements would not be admissible because there would be no prior inconsistent statement. Evid.R. 613(B).
 {¶ 60} We find that defense counsel's decision to not put Ricky Nelson on the stand, by either his own calling or by asking the court to do so, can be viewed as a tactical decision well within the prevailing professional norm. Thus, appellant cannot show that appellate counsel was ineffective for failing to raise as an assignment of error on appeal, the failure of his trial counsel to ask the trial court to call Ricky Nelson as its own witness under Evid.R. 614(A). Accordingly, appellant's second proposed assignment of error does not set forth a basis for reopening his appeal.
 {¶ 61} Under his third proposed assignment of error, appellant contends that trial counsel was ineffective for failing to object in toto to Judge Hogan's testimony. Appellant further contends that his appellate counsel was ineffective for his failure on appeal to raise trial counsel's alleged ineffectiveness for failing to object in toto to Judge Hogan's testimony.
 {¶ 62} With respect to the performance of appellate counsel, it must be noted that appellate counsel raised the following as assignment of error number two:
 {¶ 63} "When an assistant prosecutor testifies in the case in chief, and details the advice he gave detectives during the arrest stages of the case, the resulting effect was contra the fair trial rights of the accused, under the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution." Caulley.
 {¶ 64} While appellate counsel did not raise an issue as to the ineffectiveness of trial counsel, appellate counsel did raise the issue of whether the admission of Judge Hogan's testimony in toto was reversible error.
 {¶ 65} In Caulley, this court stated:
 {¶ 66} "* * * Appellant's second assignment of error asserts that the trial court erred in permitting the prosecution to present the testimony of Judge Hogan. * * * Because appellant did not object at trial to Judge Hogan's testimony in toto, although certain specific aspects of the testimony were objected to, we review the general question of whether Judge Hogan should have been permitted to testify under the plain error standard. * * *
 {¶ 67} "* * *
 {¶ 68} "There is a surprising absence of specific precedent on the question of whether a prosecutor or judge should be permitted to testify in a trial in which they are not serving in their official function, and in which they have no material evidence to offer on the central issues in the case. In the present case, the state admits on appeal that it is difficult to discern any rationale for presenting Judge Hogan's testimony at all. This testimony covered primarily advice given by Judge Hogan to the investigating officers about the interview with appellant, including the ultimate advice that, after appellant's confession, there was sufficient evidence to arrest him. Judge Hogan also detailed his advice to police which led to the arrest of appellant's wife on obstruction of justice charges. None of this testimony was particularly material to any issue raised at trial pertaining to appellant's guilt. It did allow the prosecution, however, to engage in a sustained course of questioning regarding appellant's `negotiations' with the investigating officers regarding production of a further, more detailed, statement by appellant while he was held in Columbus, in exchange for the release of his wife. The general tenor of this part of Judge Hogan's testimony can be taken as bolstering the proposition that appellant, in fact, had something to confess to in more detail, thus potentially reinforcing the perception of appellant's guilt.
 {¶ 69} "Judge Hogan was effectively cross-examined by defense counsel, however, on the fact that Judge Hogan had advised the officers of whether there was sufficient probable cause to arrest appellant after his Houston confession. Judge Hogan was led to clearly state that such probable cause in no fashion would sustain the burden of proving at trial beyond a reasonable doubt that appellant was guilty. In general, then, Judge Hogan's testimony at trial must be viewed as not particularly productive for the prosecution, although certainly not helpful to the defense. Taken in its entirety, in the context of this case, the admission of such testimony by Judge Hogan does not rise to the level of plain error, because we cannot say that the outcome of the trial would have been different in its absence. However, we do acknowledge appellant's argument that testimony by a judge or prosecutor on peripheral matters in a case should be admitted with great caution. The impact of such testimony, imbued with disproportionate weight because of the aura of credibility and substance granted to the witnesses by their official positions, must be weighed relevant to its impact on the jury against the relevance of the testimony presented. Had Judge Hogan opined on the stand, as appellant incorrectly asserts on appeal, that the evidence in the case supported a finding of guilt, plain error could undoubtedly be shown on the substantial impact this would have had on the jury's perception of the facts and evidence. Given the generally inconclusive nature of Judge Hogan's testimony, however, while we conclude that such testimony should have been excluded on grounds of relevance and was thus erroneously admitted, no prejudice rising to the level of plain error can be shown. Appellant's second assignment of error is accordingly overruled."
 {¶ 70} According to appellant, his trial was prejudiced when Judge Hogan testified: (1) about appellant's offer to make a more detailed statement in exchange for release of his wife; and (2) that there was probable cause to arrest appellant.
 {¶ 71} This court has previously answered the question of whether appellant's trial was prejudiced by those two portions of Judge Hogan's testimony under the plain error doctrine. See Crim.R. 52(B).
 {¶ 72} In order to constitute plain error, the error alleged must be obvious on the record, palpable, and fundamental such that it would have been apparent to the trial court without objection. State v. Tichon (1995), 102 Ohio App.3d 758, 767. Plain error will not be found unless appellant establishes that the outcome of the trial clearly would have been different but for the trial court's alleged improper action. State v. Waddell (1996), 75 Ohio St.3d 163, 166. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Phillips (1995),74 Ohio St.3d 72, 83.
 {¶ 73} Here, this court must apply the two-part test under Strickland, supra. Again, in order to establish a claim of ineffective assistance of appellate counsel, a defendant must show that his counsel's performance was deficient and that prejudice arose from counsel's deficient performance. State v. Burke (Nov. 15, 2001), Franklin App. No. 90AP-1344.
 {¶ 74} Here, we find appellant has failed to meet both parts of Strickland's test. First, appellate counsel did raise in the second assignment of error the issue of whether the trial court erred in permitting the testimony of Judge Hogan. While this court reviewed the impact of Judge Hogan's testimony under the plain error doctrine, we find that the result would have been no different had appellate counsel added an assignment of error alleging the ineffectiveness of trial counsel.
 {¶ 75} Second, for essentially the same reasons presented in this court's opinion in Caulley, supra, this court finds that, even if appellate counsel was deficient in failing to raise ineffectiveness of trial counsel, appellant's trial was clearly not prejudiced by the testimony of Judge Hogan under the Strickland standard. Accordingly, appellant's third proposed assignment of error does not set forth a basis for reopening his appeal.
 {¶ 76} Under his fourth proposed assignment of error, appellant contends that he was prejudiced when the trial court allowed alternate jurors in the jury room during deliberations. According to appellant, his appellate counsel was deficient for failing to raise the alternate juror issue on appeal and for failing to raise ineffective assistance of trial counsel for trial counsel's acquiescence in permitting the alternate jurors in the jury room.
 {¶ 77} After closing arguments, the trial court led a discussion with counsel, out of the presence of the jury, on how to handle the alternate jurors during deliberation. The prosecuting attorney indicated that there was authority permitting the alternates to be in the jury room so long as they are instructed not to participate, but that counsel must agree to this arrangement. At that point, defense counsel indicated his agreement, and then told the court, "I just wanted to let you know that we're deferring to your judgment in whatever you think best." (Tr. 3520.)
 {¶ 78} Thereafter, the trial court addressed the jurors:
 {¶ 79} "* * * I'm going to let you all take over the courtroom for your deliberations.
 {¶ 80} "Now, this means that the twelve jurors who actually are going to sign verdict forms will be in here. The alternate jurors I'm going to put in here, but they are not to participate in the decision-making process because they are alternates. * * * So, they're going to look at the same evidence, physical evidence, that the twelve jurors are going to look at. Here again, they are not to participate in any way in the deliberations." (Tr. 3806.)
 {¶ 81} Based upon the record before this court, we find that appellant has failed to show that he was prejudiced by the presence of the alternate jurors in the jury room during deliberations.
 {¶ 82} Crim.R. 24(F) requires that any alternate juror not substituted for a regular juror be discharged when the jury retires. It is generally regarded as erroneous to permit alternates to sit in on jury deliberations. State v. Murphy (2001), 91 Ohio St.3d 516. However, such error is subject to the waiver and plain error rules. Id.
 {¶ 83} In United States v. Olano (1993), 507 U.S. 725,113 S.Ct. 1770, the United States Supreme Court held that while it was error to let alternate jurors attend deliberations, the error was not reversible under the federal, "plain error" standard because it was not shown to have affected a substantial right. The Olano court explained that error in such a case will not be presumed, and that under Fed.R.Civ.P. 52(b), the party complaining of error has the burden of showing that the alternates disobeyed the court's instructions by participating in the deliberations, either verbally or by body language, or that their presence chilled the deliberative process. Id. at 739-741; Murphy, supra, at 533.
 {¶ 84} Here, trial counsel agreed to allowing the alternates to observe deliberations. Moreover, there is no evidence in the record whatsoever to suggest that the alternate jurors disobeyed the trial court's instructions, participated in deliberations, or "chilled" deliberations by their presence. Thus, there is no evidence that appellant was prejudiced. Even if appellate counsel was arguably deficient for failing to raise on the appeal the ineffectiveness of trial counsel in his acquiescence in the trial court's decision to permit the alternate jurors to observe the deliberations under Strickland's two-part test, appellant has failed to show that he was prejudiced. Thus, appellant's fourth proposed assignment of error does not provide a basis for reopening the appeal.
 {¶ 85} Accordingly, finding that appellant has failed to demonstrate the existence of a genuine issue as required by App.R. 26(B)(5), appellant's application to reopen is hereby denied.
Application to reopen denied.
BOWMAN and BRYANT, JJ., concur.